IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


ADAM KLEIST,                                    05-CV-564-BR

          Plaintiff,

                                                OPINION AND ORDER

v.

PACCHIOSI DRILL U.S.A, INC.,
a New York corporation;
PACCHIOSI DRILL SPA, a
foreign corporation;
IMPREGILO SPA INC., a foreign
corporation; and S.A. HEALY
COMPANY, a foreign
corporation, dba IMPREGILO
HEALY VENTURE,

          Defendant.


THOMAS K. DOYLE
Bennett, Hartman, Morris & Kaplan, LLP
111 SW Fifth Avenue, Suite 1650
Portland, OR  97204-1376
(503) 227-4600

          Attorneys for Plaintiff

1 - OPINION AND ORDER

**ALLYSON S. KRUEGER**
Hitt Hiler Monfils Williams LLP
411 S.W. Second Avenue, Suite 400
Portland, OR  97204
(503) 595-5382

      Attorneys for Defendant Pacchiosi Drill, U.S.A., Inc.

**JEAN OHMAN BACK**
**NATHAN SCHWARTZ SYKES**
Schwabe Williamson & Wyatt, PC
1600-1900 Pacwest Center
1211 SW Fifth Avenue
Portland, OR 97204
(503) 796-2960

      Attorneys for Defendant Impregilo SpA, Inc. and S.A.
      Healy Company dba Impregilo Healy Venture


**BROWN, Judge.**

      This matter comes before the Court on the Motion for Summary
Judgment of Defendant Paccioshi Drill, U.S.A., Inc. (#23).

      In the course of oral argument on Pacchiosi's Motion on
April 27, 2006, the Court denied the Motion as to Plaintiff Adam
Kleist's claim for discrimination in retaliation for filing a
worker's compensation claim because there were unresolved issues
of material fact.  The Court took Plaintiff's remaining claims
under advisement.

      For the reasons that follow, the Court **GRANTS** Pacchiosi's
Motion for Summary Judgment on Plaintiff's claims for disability
discrimination and intentional infliction of emotional distress.


2 - OPINION AND ORDER

**BACKGROUND**

The following facts are undisputed except as otherwise noted:

Impreglio SpA Inc. and S.A. Healy Company are the prime contractors in a joint venture on a pipeline project in Portland, Oregon.  Pacchiosi, a contractor on the project, contracted with the Operating Engineers Local 701 in Portland to provide Journeyman Operating Engineers to work as helpers to Pacchiosi's permanent employees.

On March 24, 2003, the union hiring hall dispatched Plaintiff to the Pacchiosi job site where he was assigned to work as an assistant or helper in the batch plant.  Plaintiff's duties included keeping cement supplied to the batch plant, mixing polymers for the drilling process, mixing grout, assisting the pump operator, cleaning between columns, and fueling and occasionally operating the forklift and excavator.

On June 24, 2003, Plaintiff suffered a puncture wound on his hand.  Pursuant to Pacchiosi's employment policy, Plaintiff reported the injury immediately and filed a worker's compensation claim, but he did not request or need any time off.

On June 30, 2003, Plaintiff reported to Project Manager Yves St-Amour that he had injured his back on the job lifting a heavy piece of steel pipe.  On July 1, 2003, Plaintiff saw Craig Thompson, M.D., who diagnosed Plaintiff with a "sprain-left

rhomboid" and "pain in limb, LUE" and released Plaintiff to his regular work duties.

On July 7, 2003, Plaintiff went to see Dr. Thompson again and complained of continuing back pain.  Dr. Thompson released Plaintiff to modified duty with restrictions of "Minimal pushing or pulling over 20 lbs, Minimal lifting over 20 lbs, Minimal work at or above shoulder level" until July 14, 2003.

On July 14, 2003, Plaintiff went to Dr. Thompson again. Dr. Thompson released Plaintiff to modified duty with restrictions of "No pushing or pulling over 20 lbs, No lifting repetitively over 20 lbs, No climbing ladders or scaffolding, No work at or above shoulder level" until July 29, 2003.

Plaintiff testified at his deposition that one of his supervisors, Emmanuel Grella, told him on July 15, 2003, that he was going to be terminated or laid off and that he could pick up his paycheck the next day because Pacchiosi did not have any light-duty work.  Plaintiff also testified he could have performed his regular duties other than climbing ladders and lifting "real heavy stuff."

On July 16, 2003, Patty Sieg, a State Accident Insurance Fund Corporation (SAIF) claims examiner, conducted a recorded telephone interview with Plaintiff.  Sieg advised Plaintiff that SAIF would offer him an appropriate light-duty job.  On the same day, Grella told Plaintiff to report to work on July 17, 2003,

because Pacchiosi had light-duty work for him.

On July 17, 2003, Plaintiff reported to the job site at 7:00 a.m.  There was not a supervisor present and he was unsure what work to do, so he started working with the excavator. St-Amour or Grella told Plaintiff to stop using the excavator and assigned Plaintiff to chisel cement off of a mini-excavator.

On the same day, Annie Hansen, a return-to-work consultant with SAIF, went to the job site and met with Grella in order to write a modified temporary job description for Plaintiff.  Hansen faxed the modified job description to Dr. Thompson, who approved the modified job description as appropriate to Plaintiff's limitations.

On July 18, 2003, Grella again assigned Plaintiff to chisel cement off of the equipment.  In the afternoon, Grella presented Plaintiff with the light-duty job description approved by SAIF and Dr. Thompson on the previous day.  Grella also gave Plaintiff a letter offering him the job.  Plaintiff, however, refused the offer because he was offended.  Plaintiff testified at his deposition that "this is the job of a maid and a laborer.  It's very humiliating for an operator to be required to do this job."

On July 19, 2003, Plaintiff called in sick because his back hurt.  On July 22, 2003, Plaintiff went to see Dr. Thompson and complained of discomfort.  Dr. Thompson released Plaintiff to work with restrictions of "No lifting over 50 lbs, otherwise can

do usual job" until August 5, 2003.

On July 23, 2003, Pacchiosi presented Plaintiff with another modified work proposal based on the July 22, 2003, release restrictions.  Dr. Thompson approved the new modified work proposal, and Plaintiff accepted the offer.  Plaintiff performed his regular job duties other than heavy lifting from July 23, 2003, to August 2, 2003.

On Monday, August 4, 2003, Plaintiff went to see Mark Belza, M.D., for a second opinion on his back injury.  Dr. Belza took Plaintiff off work from August 4 through August 25, 2003.

On August 25, 2003, Dr. Belza released Plaintiff to a modified work status of "light work" "effective 1w-."  Plaintiff believed Dr. Belza intended the release to take effect one week from the date of the release.  Plaintiff, therefore, reported to the job site on September 2, 2003; provided either St-Amour or another supervisor with a copy of Dr. Belza's work release; and returned to work.  On the same day, Pacchiosi reinstated Plaintiff to his former position.

On September 13, 2003, Pacchiosi terminated Plaintiff's employment.

On April 25, 2005, Plaintiff filed a Complaint in this Court alleging Defendants (1) discriminated against him in retaliation for filing a worker's compensation claim in violation of Oregon Revised Statutes § 659A.040; (2) violated his rights under the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and Oregon's Disabilities Act; (3) violated his rights under the Family Medical Leave Act; and (4) intentionally inflicted emotional distress.  On July 1, 2005, Plaintiff filed an Amended Complaint in which he alleged Defendants (1) discriminated against him in retaliation for filing a worker's compensation claim in violation of Oregon Revised Statutes § 659A.040, (2) violated his rights under the ADA and Oregon's Disabilities Act, and (3) intentionally inflicted emotional distress.

On January 27, 2006, Pacchiosi filed a Motion for Summary Judgment as to all of Plaintiff's claims.  As noted, during oral argument, the Court denied Pacchiosi's Motion from the bench as to Plaintiff's worker's compensation discrimination claim.


### **STANDARDS**

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id.*

7 - OPINION AND ORDER

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id.* A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I.    Plaintiff's Claims under the ADA and Oregon's Disabilities Act

Plaintiff alleges he was disabled. He contends Pacchiosi

failed to accommodate his disability and retaliated against him on the basis of his disability in violation of his rights under the ADA and the Oregon Disabilities Act.

## A.    Plaintiff's ADA Claim

### 1.    Exhaustion

According to Pacchiosi, Plaintiff's Bureau of Labor and Industries (BOLI) complaint did not include any claim for disability discrimination, and, as a result, Plaintiff did not exhaust his administrative remedies with respect to this claim. Accordingly, Pacchiosi contends Plaintiff's ADA claim is barred.

To establish federal subject matter jurisdiction, a plaintiff is required to exhaust administrative remedies before seeking federal adjudication of his claims. *Deppe v. United Airlines*, 217 F.3d 1262, 1266-67 (9th Cir. 2000).  This Court has jurisdiction over any allegations of discrimination that are "like or reasonably related" to the allegations made in the BOLI complaint or that fall within the BOLI "investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1267.

Although Plaintiff does not dispute he failed to check the box on the BOLI questionnaire for "disability discrimination," he contends the Court should construe his BOLI complaint liberally to include a claim for disability discrimination because such a claim could fall within the scope

of the administrative investigation and "grow out of" the
original charge.

Plaintiff's BOLI complaint and the investigation that
occurred thereunder, however, do not contain any mention or
suggestion that Plaintiff believed he was disabled or that he
alleged discrimination on the basis of a disability.  The BOLI
materials address only the issue of discrimination for filing a
worker's compensation claim.  Moreover, Plaintiff's interview
with Sieg does not contain any mention of disability
discrimination; none of the investigatory materials or
substantial findings of BOLI contain any reference to disability
discrimination; and, given the relatively short duration of
Plaintiff's injury, it is uncertain whether such an injury could
be considered a disability within the meaning of the ADA.  It is
not likely, therefore, that a disability discrimination
investigation could "reasonably be expected to grow out of"
Plaintiff's claim of worker's compensation discrimination.  *See
Ismail v. Univ. of Portland*, No. 98-1477-KI, 1999 WL 732590
(D. Or. Sept. 21, 1999)(Plaintiff's Equal Employment Opportunity
Commission (EEOC) complaint alleging disparate treatment on the
basis of sex could not "fairly be construed to state or infer
. . . [Plaintiff] experienced sexual harassment.").

Plaintiff cites *B.K.B. v. Maui Police Department*, 276
F.3d 1091 (9th Cir. 2002), and *Albano v. Schering-Plough*

10 - OPINION AND ORDER

*Corporation*, 912 F.2d 384 (9th Cir. 1990), to support his contention that his BOLI complaint was sufficient to constitute exhaustion of a claim for disability discrimination because he filed his BOLI complaint *pro se*. Those cases, however, are distinguishable.

In *B.K.B.*, the plaintiff completed a questionnaire in which she alleged she suffered racial and sexual harassment. When the agency typed up the form, however, the agency failed to include sexual harassment as a basis for the charge. 276 F.3d at 1101-03. The court concluded under those facts that the plaintiff had exhausted her administrative remedies as to her sexual harassment claim. *Id.* at 1103. In *Albano*, the court found the plaintiff had attempted to correct his EEOC complaint to add a claim, but the EEOC would not allow him to do so. The court held the plaintiff's complaint was "not foreclosed because of the lack of an amended charge before the EEOC." 912 F.2d at 389. Here there is not any evidence that BOLI omitted an allegation of disability discrimination that appeared in Plaintiff's complaint or that BOLI refused to allow Plaintiff to amend his complaint by adding such a claim. Accordingly, neither *B.K.B.* nor *Albano* is controlling in this matter.

On this record, the Court concludes Plaintiff has not exhausted his administrative remedies under the ADA, and, therefore, he is now time-barred from doing so.

## 2.    Disability

Even if the Court found Plaintiff exhausted his administrative remedies with respect to his ADA claim, Pacchiosi contends it is entitled to summary judgment because Plaintiff has not shown he is disabled within the meaning of the ADA.

42 U.S.C. § 12101(2)(A) defines a disability as a "physical . . . impairment that substantially limits one or more of the major life activities of such individual."  The Supreme Court has held "one must have an actual disability to fall within this definition." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 478 (1999).  Every impairment is not considered a disability. Plaintiff bears the burden to establish that he has a disability under the ADA. *See, e.g., Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002)("Merely having an impairment does not make one disabled for the purposes of the ADA.").

Here Plaintiff could not recall any activities that he was unable to do in September 2003 as a result of his back injury.  According to Plaintiff's deposition testimony, he experiences some stiffness that prevents him from participating in certain sports such as skiing, racquetball, tennis, and basketball, which he used to do "on occasion."  Plaintiff, however, could not think of any other limitations.  Plaintiff also testified he built a steel welding fabrication shop in Arizona between February and June of 2005 and did 90% of the work

himself.  In other words, Plaintiff has not produced any evidence
to establish that he is substantially limited as to any major
life activity or that he was limited at the time Pacchiosi
terminated his employment.  *See Sanders v. Amerson Prods. Inc.*,
91 F.3d 1351, 1354 (9th Cir. 1996)(temporary disabilities
generally do not constitute disabilities under the ADA).  Thus,
even if Plaintiff had properly exhausted his administrative
remedies, he has not shown there is a triable issue as to whether
he is disabled under the ADA.

Accordingly, the Court grants Pacchiosi's Motion for Summary
Judgment as to Plaintiff's ADA claim.

**B.  Plaintiff's Oregon Discrimination Claim under Oregon
     Revised Statutes § 659A.100, *et seq*.**

**1.  Exhaustion**

If a plaintiff does not file a BOLI complaint, he must file
an action alleging disability discrimination within one year from
the alleged unlawful employment action.  Or. Rev. Stat.
§ 659A.875.  Pacchiosi terminated Plaintiff's employment on
September 12, 2003.  As noted, Plaintiff's BOLI claim did not
include a claim for disability discrimination, and Plaintiff did
not file this action until April 25, 2005, which is more than one
year after the alleged discriminatory conduct.

Accordingly, the Court concludes Plaintiff's state-law claim
for disability discrimination is untimely.

13 - OPINION AND ORDER

###### 2.    Disability

Oregon Revised Statutes § 659A.100(a) defines a disability as "a physical or mental impairment that substantially limits one or major life activities."  Accordingly, for the same reasons noted earlier, the Court finds Plaintiff has not established any triable issue as to whether he has or did have a disability.

The Court, therefore, grants Pacchiosi's Motion for Summary Judgment as to Plaintiff's Oregon disability discrimination claim.

## IV. Plaintiff's Claim for Intentional Infliction of Emotional Distress

Plaintiff alleges he suffered severe emotional distress when he was assigned to chisel concrete off of the excavator because it was a humiliating and painful job.

To establish a claim for intentional infliction of emotional distress under Oregon law, the plaintiff must prove the following elements:

> (1) the defendant intended to inflict severe emotional distress on the plaintiff;
> (2) defendant's acts were the cause of plaintiff's severe emotional distress; and
> (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

*Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1223 (9th Cir. 1999). "Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law."

14 - OPINION AND ORDER

*Harris v. Pameco Corp.*, 170 Or. App. 164, 171 (2000).

> The inquiry is whether defendant's conduct
> constitutes extraordinary conduct which a
> reasonable jury could find beyond the
> farthest reaches of socially tolerable
> behavior.  Conduct that is merely rude,
> boorish, tyrannical, churlish and mean does
> not satisfy that standard[.]  A court may
> consider the existence of special
> relationships between the parties in
> determining the issue.  An employee and
> employer relationship is such a relationship.

*MacCrone v. Edwards Ctr., Inc.*, 160 Or. App. 91, 100 (1999)
(internal quotations and citations omitted).

Although claims for intentional infliction of emotional
distress are common in the context of employment disputes, Oregon
appellate courts have been reluctant to impose liability for
these claims in employment settings.  *See, e.g.*, *Madani v.
Kendall Ford Co.*, 312 Or. 198 (1991), *abrogated on other grounds
by McGanty v. Staudenrous,* 321 Or. 532, 544 (1995); *Lewis v.
Oregon Beauty Supply Co.*, 302 Or. 616 (1987); *Patton v. J.C.
Penney Co.*, 301 Or. 117 (1986), *abrogated on other grounds by
McGanty*, 321 Or. at 544; *Watte v. Edgar Maeyens, Jr., M.D., P.C.*,
112 Or. App. 234 (1992); *Snyder v. Sunshine Dairy*, 87 Or. App.
215 (1987).  In particular, Oregon courts have held the following
do not constitute extraordinary transgressions of the bounds of
socially tolerable conduct:  terminating an employee for refusing
to pull down his pants, *Madani*, 312 Or. at 203-06; terminating an
employee because he refused to stop dating a co-worker, *Patton*,

301 Or. at 124; an employer throwing a tantrum, screaming and
yelling at his employees, accusing them of being liars and
saboteurs, then firing them all, *Watte*, 112 Or. App. at 237;
employer engaged in inconsistent and excessive supervision,
unjustified reprimands, threats of termination, requiring the
employee to perform menial tasks, *Snyder*, 87 Or. App. at 218.

The Oregon Supreme Court has acknowledged "[i]ntentionally
causing another person severe emotional distress by exposing that
person to a threat of imminent physical harm is, or may be,
outside the bounds of socially tolerable behavior." *Babick v.
Or. Arena Corp.*, 333 Or. 401, 413 (2002)(citing *Brewer v. Erwin*,
287 Or. 435, 458-60 (1979))(landlord's attempt to frighten tenant
out of apartment by disconnecting utilities, acting in
threatening manner, and demolishing part of building while tenant
was residing in it could constitute intentional infliction of
severe emotional distress). In *Babick*, however, the court

> assume[d] the threat to plaintiffs was a grave
> one, *i.e.,* that, under the circumstances, there
> was a significant probability that the
> "intoxicated and violent" detainees physically
> would attack and harm those who had detained them.
> We also assume, given plaintiffs' other
> allegations about defendant's conduct during the
> concert, that defendant not only released a
> vengeful mob against plaintiffs, but in some sense
> added to the threatening atmosphere by interfering
> with plaintiffs' work and publicly rebuking them
> on the scene.

333 Or. at 413. Accordingly, the court found the "plaintiffs
. . . alleged conduct that a jury could conclude was socially

16 - OPINION AND ORDER

intolerable." *Id*.

Here Plaintiff, however, has not shown any such threat to his health or safety. Although Plaintiff alleges the chiseling made his back hurt and the work was humiliating, these allegations do not rise to the level of the socially intolerable conduct described in *Babick*.

Plaintiff also cites *Travis v. Knappenberger* to support his contention that intentionally ordering an employee to do certain work when the employer knows that work would exacerbate the employee's preexisting injury constitutes intentional infliction of emotional distress. No. CV 00-393-HU, 2000 WL 1853084 (D. Or. Dec. 13, 2000). Plaintiff, however, relies only on the court's opinion early in the case that it would be improper and premature to grant the defendant's motion to dismiss because the plaintiff might be able to come forward with facts to support her claim. In the end, however, the district court granted the defendant summary judgment on the plaintiff's claim for intentional infliction of emotional distress on the grounds that even though the defendant had required the plaintiff to type past the time her doctor told her to stop to take breaks, the defendant was aware of the doctor's orders and the defendant's conduct caused harm to the plaintiff:

> Mere indifference to [the plaintiff's] possible distress is not sufficient to support a claim for intentional infliction of emotional distress. *See Humphers v. First Interstate Bank*, 68 Or. App.

17 - OPINION AND ORDER

> 573, 576 (1985).  Nor does such conduct, even if
> intended to cause severe emotional distress,
> constitute an extraordinary transgression of the
> bounds of socially tolerable conduct.

No. CV 00-393-HU, Order at 4 (issued May 14, 2002).

The facts here are similar to those in *Turnbow v. K.E. Enterprises*, 155 Or. App. 59 (1998).  Although *Turnbow* is an Oregon Court of Appeals case and, therefore, not binding on this Court, the *Turnbow* court's analysis is instructive and persuasive.  In *Turnbow*, the plaintiff alleged his employer intended to inflict severe emotional distress when it required him to continue using a truck that caused him to injure his back, and the employer then refused to accommodate the plaintiff with an air-ride seat to alleviate his back pain.  *Id*. at 64-65.  The plaintiff also offered evidence that the employer admitted it "was aware that [the plaintiff] was in pain while on the job." *Id*. at 64.  The court held:

> The above evidence does not constitute evidence of
> an "extraordinary transgression of the bounds of
> socially tolerable conduct" as a matter of law.
> At best, [the employer's] conduct shows an
> indifference toward plaintiff and his physical
> condition. Thus, the trial court did not err in
> granting summary judgment to defendants on that
> claim.

*Id*. at 65.

As in *Turnbow*, the record here, viewed in the light most favorable to Plaintiff, does not contain evidence from which a trier of fact could conclude Pacchiosi's conduct was sufficiently

egregious to support a claim for intentional infliction of emotional distress.

Accordingly, the Court grants Pacchiosi's Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Pacchiosi's Motion to for Summary Judgment (#23) as to Plaintiff's claims for disability discrimination and intentional infliction of emotional distress.

IT IS SO ORDERED.

DATED this 11th day of May, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge